FILED
CLERK, U.S. DISTRICT COURT

05/05/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ AP _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

April 2021 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | ED CR No. 5:21-cr-00105-JGB |
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. § 846: Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine; 21 U.S.C. § 963: Conspiracy to Import Methamphetamine; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii), (b)(1)(B)(viii): Possession With Intent to Distribute Methamphetamine; 21 U.S.C. §§ 841(a)(1), (b)(1)(b)(vi): Possession With Intent to Distribute Fentanyl; 21 U.S.C. §§ 952(a), 960(a)(1), (b)(1)(H): Importation of Methamphetamine; 18 U.S.C. § 922(g)(1): Felon in Possession of Ammunition; 18 U.S.C. § 1956(a)(2)(A): Attempted International Promotional Money Laundering; 21 U.S.C. §§ 853, 970; 18 U.S.C. §§ 924(d)(1), 982; 28 U.S.C. § 2461(c): Criminal Forfeiture; Sentencing Allegations] |
| TIMOTEO GOMEZ, aka "Timo," and "Tim," JAVIER RODRIGUEZ, aka "Javi," "Harvey," "Harv," and "Xavier," RUBEN MARTINEZ LOPEZ, ERNY OCTAVIO RAMIREZ, AARON MICHAEL PEDIGO, STEPHANIE LORRAINE CORNELL, ESPERANZA MAGDENLENA SANTANA, PAUL ALBERT BARRETT, aka "Tech," ARTHUR MIKE MANDONADO, aka "Toro," PAUL THOMAS NOVELLINO, MIGUEL ANGEL ESPINOZA, RONNIE MARQUEZ, aka "Shadow," LOUIE GUTIERREZ, aka "Karma," ROBERT DOMINIC GARCIA, aka "Beto," ROBERT ANTHONY GALICIA, | |

MANUEL JESUS APPEL,
JITENDRA SINGH ANAND,
  aka "Jake,"
LOUIS JOE MIRANDA,
  aka "Lou," and
ANGELICA MONSERRAT VARELA,
  aka "Angela,"

        Defendants.

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[ALL DEFENDANTS]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about August 26, 2020, in Los Angeles and Riverside Counties, within the Central District of California, the country of Mexico, and elsewhere, defendants TIMOTEO GOMEZ, also known as ("aka") "Timo" and "Tim," JAVIER RODRIGUEZ, aka "Javi," "Harvey," "Harv," and "Xavier," RUBEN MARTINEZ LOPEZ, ERNY OCTAVIO RAMIREZ, AARON MICHAEL PEDIGO, STEPHANIE LORRAINE CORNELL, ESPERANZA MAGDENLENA SANTANA, PAUL ALBERT BARRETT, aka "Tech," ARTHUR MIKE MANDONADO, aka "Toro," PAUL THOMAS NOVELLINO, MIGUEL ANGEL ESPINOZA, RONNIE MARQUEZ, aka "Shadow," LOUIE GUTIERREZ, aka "Karma," ROBERT DOMINIC GARCIA, aka "Beto," ROBERT ANTHONY GALICIA, MANUEL JESUS APPEL, JITENDRA SINGH ANAND, aka "Jake," LOUIS JOE MIRANDA, aka "Lou," and ANGELICA MONSERRAT VARELA, aka "Angela" (collectively, the "defendants"), conspired with each other and others known and unknown to the Grand Jury to knowingly and intentionally distribute and possess with intent to distribute at least 50 grams of methamphetamine, a Schedule II controlled

substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A)(viii).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendants GOMEZ and RODRIGUEZ would purchase methamphetamine for further distribution from suppliers in Los Angeles and Riverside Counties and the country of Mexico, including from defendants MARTINEZ LOPEZ and OCTAVIO RAMIREZ.

2.   Defendants GOMEZ and RODRIGUEZ would supply and agree to supply defendants PEDIGO, CORNELL, SANTANA, BARRETT, MANDONADO, NOVELLINO, ESPINOZA, MARQUEZ, GUTIERREZ, GARCIA and GALICIA with methamphetamine for further distribution.

3.   Defendants APPEL, ANAND and MIRANDA would transport methamphetamine from suppliers in the country of Mexico, including from defendant MARTINEZ LOPEZ, to defendants GOMEZ and RODRIGUEZ.

4.   Defendant APPEL would collect payments for methamphetamine from defendant RODRIGUEZ and deliver the payments to defendant MARTINEZ LOPEZ.

5.   Defendant VARELA would be on the lookout for law enforcement when defendant GOMEZ was transporting methamphetamine.

C.   OVERT ACTS

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, the defendants, together with others known and unknown to the Grand Jury, committed various overt acts in Los Angeles and Riverside Counties, within the Central District of

California, the country of Mexico, and elsewhere, including, but not limited to, the following:

April 22, 2020 Seizure of Approximately

46.6 Pounds of Methamphetamine

1.    On April 22, 2020, defendant ANAND drove a load of approximately 21.168 kilograms, or 46.6 pounds, of methamphetamine across the United States – Mexico border at the Calexico West Port of Entry and into Riverside County.

May 15, 2020 Seizure of Approximately 90.39 Pounds of Methamphetamine

2.    On or about May 15, 2020, defendant MIRANDA attempted to drive a load of approximately 41 kilograms, or 90.39 pounds, of methamphetamine across the United States – Mexico border at the San Ysidro Port of Entry.

3.    On May 23, 2020, using coded language during a phone call, defendant GOMEZ and an associate ("Associate 1") discussed whether defendant MIRANDA would be paid for his attempt to drive methamphetamine across the border.

May 28, 2020 Seizure of Approximately 8.6 Pounds of Methamphetamine

4.    On May 26, 2020, using coded language during a phone call, defendant GOMEZ and a supplier ("Supplier 1") discussed Supplier 1 selling 10 pounds of methamphetamine to defendant GOMEZ for $2,500 per pound.

5.    On May 27, 2020, using coded language during a phone call, defendant GOMEZ and a supplier ("Supplier 2") discussed Supplier 2 selling defendant GOMEZ methamphetamine on behalf of Supplier 1 in Norwalk, California.

6.   On May 27, 2020, using coded language during a phone call, defendant GOMEZ agreed to purchase methamphetamine from Supplier 2 the next morning, on May 28, 2020.

7.   On May 27, 2020, using coded language during a phone call, defendant CORNELL told defendant GOMEZ that she lined up a buyer for two pounds of methamphetamine, and defendant GOMEZ informed defendant CORNELL that his purchase of methamphetamine was delayed until the next morning, on May 28, 2020.

8.   On May 28, 2020, using coded language during a phone call, defendant CORNELL told defendant GOMEZ that she had $8,000 to contribute towards the purchase of methamphetamine.

9.   On May 28, 2020, using coded language during a phone call, defendant RODRIGUEZ told defendant GOMEZ that he had $11,000 to contribute towards the purchase of methamphetamine.

10.   On May 28, 2020, using coded language during a phone call, defendant CORNELL informed defendant GOMEZ that defendant SANTANA had the money defendant CORNELL was contributing towards the purchase of methamphetamine.

11.   On May 28, 2020, using coded language during a phone call, defendant GOMEZ told Supplier 2 that defendant GOMEZ would go to Norwalk, California to purchase the methamphetamine.

12.   On May 28, 2020, defendants GOMEZ, RODRIGUEZ, and SANTANA drove to a Jack in the Box restaurant in Norwalk, California (the "Jack in the Box") to purchase methamphetamine.

13.   On May 28, 2020, using coded language in text messages, defendant GOMEZ told Supplier 2 that he was arriving at the Jack in the Box, and Supplier 2 responded that he was in a white car in the parking lot of the Jack in the Box.

14.   On May 28, 2020, defendant GOMEZ purchased an unknown quantity of methamphetamine from a co-conspirator in a white Hyundai Sonata in the parking lot of the Jack in the Box.

15.   On May 28, 2020, using coded language during a phone call, defendants GOMEZ and SANTANA told defendant CORNELL that the purchase of methamphetamine was completed and that they would bring the methamphetamine to defendant CORNELL's home.

16.   On May 28, 2020, defendants GOMEZ, RODRIGUEZ, and SANTANA drove to defendant RODRIGUEZ's home with the methamphetamine purchased in the parking lot of the Jack in the Box.

17.   On May 28, 2020, after stopping at defendant RODRIGUEZ's home, defendants GOMEZ and SANTANA drove to defendant CORNELL's home with approximately 1.334 kilograms of methamphetamine concealed in defendant GOMEZ's car.

18.   On May 28, 2020, defendant RODRIGUEZ possessed with the intent to distribute approximately 27.9 grams of methamphetamine in his car and approximately 2.283 kilograms of methamphetamine in his home, along with $7,000 in cash, 50 rounds of Blazer .357 caliber ammunition, and 100 rounds of Winchester 9mm caliber ammunition.

19.   On May 28, 2020, defendants BARRETT and MANDONADO met with defendant RODRIGUEZ inside of defendant RODRIGUEZ's home.

20.   On May 28, 2020, defendants BARRETT and MANDONADO possessed with the intent to distribute approximately 245.4 grams of methamphetamine in a Nissan Titan pick-up truck.

21.   On May 28, 2020, defendant MANDONADO possessed with the intent to distribute approximately 11.88 grams of methamphetamine on his person.

May 2020 Transactions Involving Quarter-Pound and

Half-Pound Quantities of Methamphetamine

22.   On May 24, 2020, using coded language during a phone call, defendants GOMEZ and NOVELLINO discussed defendant GOMEZ supplying defendant NOVELLINO with a half-pound of methamphetamine to sell to a customer ("Customer 1").

23.   On May 24, 2020, using coded language during a phone call and in a text message, defendant NOVELLINO informed defendant GOMEZ that he sold a half-pound of methamphetamine to Customer 1 for $1,400.

24.   On May 24, 2020, using coded language during a phone call, defendant GOMEZ agreed to supply defendant NOVELLINO with another half-pound of methamphetamine for defendant NOVELLINO to sell to a customer ("Customer 2").

25.   On May 25, 2020, using coded language during a phone call, defendants GOMEZ and NOVELLINO discussed defendant GOMEZ supplying defendant NOVELLINO with a quarter-pound of methamphetamine for $700, which defendant NOVELLINO would then sell to a customer ("Customer 3").

26.   On May 27, 2020, defendant GOMEZ met with defendant NOVELLINO at defendant NOVELLINO's home to sell an unknown amount of methamphetamine to defendant NOVELLINO for $300 per ounce.

June 9, 2020 Possession of 16.73 Grams of Methamphetamine

27.   On June 9, 2020, defendant NOVELLINO possessed with the intent to distribute approximately 16.73 grams of methamphetamine, as well as approximately 59.2 grams of fentanyl, a notebook containing pay/owe information, a fake WD-40 can to hide drugs, two fake RedBull

cans to hide drugs, a Sharps Derringer four-barreled pistol, assault rifle parts, and 442 rounds of ammunition.

July 23, 2020 Transaction Involving Three Pounds of Methamphetamine

28. On July 22, 2020, using coded language during phone calls and in text messages, defendant OCTAVIO RAMIREZ agreed to sell defendant RODRIGUEZ three pounds of methamphetamine for $2,700 per pound at the Quality Inn & Suites in Bell Gardens, California (the "Quality Inn").

29. On July 23, 2020, using coded language during phone calls, defendant RODRIGUEZ told defendant OCTAVIO RAMIREZ that he was arriving at the Quality Inn to purchase methamphetamine and defendant OCTAVIO RAMIREZ told defendant RODRIGUEZ to come to room 317.

30. On July 23, 2020, using coded language in text messages, defendant OCTAVIO RAMIREZ told defendant RODRIGUEZ that he was returning to the Quality Inn with methamphetamine from his supplier for defendant RODRIGUEZ.

July 29, 2020 Transaction Involving One Pound of Methamphetamine

31. On July 29, 2020, using coded language during a phone call, defendant RODRIGUEZ agreed to sell one pound of methamphetamine to defendants GARCIA and GALICIA for $3,000 that night.

32. On July 29, 2020, using coded language during a phone call, defendants RODRIGUEZ and GARCIA discussed meeting at defendant RODRIGUEZ's home so that defendant RODRIGUEZ could sell methamphetamine to defendants GARCIA and GALICIA.

33. On July 29, 2020, using coded language during a phone call, defendant GARCIA told defendant RODRIGUEZ that he and defendant GALICIA arrived at defendant RODRIGUEZ's home to purchase

methamphetamine and defendant RODRIGUEZ told defendant GARCIA to come inside.

August 2-3, 2020 Transaction Involving One Pound of Methamphetamine

34.  On August 2, 2020, using coded language during a phone call, defendant RODRIGUEZ agreed to sell a pound of methamphetamine to defendant GUTIERREZ at his hotel room in the Marriott Hotel in Riverside, California (the "Riverside Marriott").

35.  On August 2, 2020, using coded language during a phone call, defendant RODRIGUEZ told defendant GUTIERREZ that he was at the Riverside Marriott, and defendant GUTIERREZ told defendant RODRIGUEZ to come to the tenth floor.

36.  On August 2, 2020, using coded language during a phone call, defendant GUTIERREZ informed defendant RODRIGUEZ that defendant GUTIERREZ had only received 10 ounces of methamphetamine, or 290 grams, which was 6 ounces less than the agreed-upon one pound of methamphetamine that defendant RODRIGUEZ was supposed to provide.

37.  On August 2, 2020, using coded language during a phone call, defendant GUTIERREZ confirmed to defendant RODRIGUEZ that defendant GUTIERREZ had only received approximately 291 grams of the 448 grams, or one pound, of methamphetamine that he was supposed to receive from defendant RODRIGUEZ.

38.  On August 3, 2020, using coded language in a text message, defendant RODRIGUEZ informed defendant GUTIERREZ that he was at the Riverside Marriott to supply defendant GUTIERREZ with the remaining methamphetamine.

///

///

August 5, 2020 Transaction Involving Two Pounds of Methamphetamine

39.  On August 5, 2020, using coded language during a phone call, defendant GOMEZ agreed to supply an associate ("Associate 2") with two pounds of methamphetamine for $2,700 per pound.

40.  On August 5, 2020, using coded language during a phone call, defendants GOMEZ and ESPINOZA discussed defendant GOMEZ supplying defendant ESPINOZA with one pound of methamphetamine.

41.  On August 5, 2020, using coded language during phone calls and in text messages, defendant GOMEZ agreed to meet a supplier ("Supplier 3") at the Corona Point Resort apartment complex in Riverside, California ("Corona Point Resort"), to purchase two pounds of methamphetamine for $5,900.

42.  On August 5, 2020, defendant GOMEZ drove to the Corona Point Resort in a Toyota Tacoma, followed by defendant ESPINOZA in a Toyota Camry, to purchase two pounds of methamphetamine from Supplier 3.

43.  On August 5, 2020, using coded language during a phone call, defendants GOMEZ and VARELA agreed to meet at a Yogurtland in Riverside, California (the "Yogurtland") so that defendant VARELA could follow defendant GOMEZ and let him know if law enforcement was near him when he transported the methamphetamine.

44.  On August 5, 2020, using coded language during a phone call, defendant GOMEZ told defendant VARELA that he was being followed by an undercover law enforcement car, and defendant VARELA told defendant GOMEZ that she would wait for him in front of the Yogurtland.

45.  On August 5, 2020, using coded language in a text message, defendant ESPINOZA thanked defendant GOMEZ for providing him with

methamphetamine and told defendant GOMEZ that he would obtain more methamphetamine from defendant GOMEZ in the future.

46.  On August 5, 2020, using coded language during a phone call, defendant VARELA told defendant GOMEZ that defendant VARELA was parked near the Yogurtland but there was an undercover police officer parked next to her.

47.  On August 5, 2020, using coded language during a phone call, defendant GOMEZ told Associate 2 that one of his suppliers was taking too long so he purchased a pound of methamphetamine for Associate 2 from another supplier for $2,900, and Associate 2 confirmed that he would buy the pound of methamphetamine from defendant GOMEZ and would buy another pound of methamphetamine from defendant GOMEZ for $2,700 when he obtains it.

48.  On August 5, 2020, using coded language during a phone call, defendant VARELA told defendant GOMEZ that an undercover police officer was following defendants VARELA and GOMEZ on the freeway.

49.  On August 5, 2020, defendant GOMEZ possessed approximately 433 grams of methamphetamine in his car that he intended to distribute to Associate 2.

July 31, 2020 Transaction Involving Two Pounds of Methamphetamine

50.  On July 17, 2020, using coded language during a phone call, defendants RODRIGUEZ and MARQUEZ discussed defendant RODRIGUEZ supplying defendant MARQUEZ with methamphetamine after defendant MARQUEZ paid defendant RODRIGUEZ for a previous supply of methamphetamine.

51.  On July 20, 2020, using coded language during a phone call, defendants RODRIGUEZ and MARQUEZ discussed defendant RODRIGUEZ supplying defendant MARQUEZ with methamphetamine by defendant MARQUEZ

putting money in a car and defendant RODRIGUEZ taking the money and leaving methamphetamine in the car.

52. On July 31, 2020, using coded language during a phone call, defendant RODRIGUEZ agreed to supply defendant MARQUEZ with two pounds of methamphetamine.

53. On July 31, 2020, defendant RODRIGUEZ met with defendant MARQUEZ at defendant MARQUEZ's home to sell defendant MARQUEZ two pounds of methamphetamine.

<u>August 7, 2020 Possession of 186.05 Grams of Methamphetamine</u>

54. On August 7, 2020, defendant MARQUEZ possessed approximately 186.05 grams of methamphetamine in his home, along with $4,360 in cash, small baggies, and two digital scales.

<u>July 20, 2020 Transaction Involving 10 Pounds of Methamphetamine</u>

55. On July 19, 2020, using coded language during a phone call, defendant RODRIGUEZ informed defendant PEDIGO that their supplier would sell them 10 pounds of methamphetamine for $2,700 per pound.

56. On July 20, 2020, using coded language during a phone call, defendant MARTINEZ LOPEZ told defendant RODRIGUEZ that defendant APPEL was crossing into the United States from Mexico with the methamphetamine soon, and defendant MARTINEZ LOPEZ instructed defendant RODRIGUEZ to only give defendant APPEL the money for the methamphetamine if defendant APPEL was accompanied by his relatives ("Courier 1" and "Courier 2").

57. On July 20, 2020, using coded language during a phone call, defendant MARTINEZ LOPEZ told defendant RODRIGUEZ that defendant APPEL would arrive at defendant RODRIGUEZ's home in an hour and twenty minutes, and defendant RODRIGUEZ told defendant MARTINEZ LOPEZ that he had $26,800 to pay for the methamphetamine.

58.   On July 20, 2020, defendant APPEL and Courier 1 crossed the United States – Mexico border and drove to defendant RODRIGUEZ's home to sell defendant RODRIGUEZ methamphetamine.

59.   On July 20, 2020, using coded language during a phone call, defendant RODRIGUEZ told defendant MARTINEZ LOPEZ that defendant APPEL had arrived with Courier 1, and defendant MARTINEZ LOPEZ instructed defendant RODRIGUEZ to pay the money for the methamphetamine to defendant APPEL.

### July 21, 2020 Possession of Approximately 3.31 Pounds of Methamphetamine

60.   On July 21, 2020, defendant PEDIGO possessed with the intent to distribute approximately 1.504 kilograms, or 3.31 pounds, of methamphetamine in his car, along with 20 rounds of Prvi Partizan .223 caliber ammunition and one round of Magtech .357 caliber ammunition.

### July 30, 2020 Transaction Involving 15 Pounds of Methamphetamine

61.   On July 30, 2020, using coded language during a phone call, defendant MARTINEZ LOPEZ told defendant RODRIGUEZ that the courier would arrive at defendant RODRIGUEZ's home around 5:30 p.m. to deliver 15 pounds of methamphetamine.

62.   On July 30, 2020, defendant APPEL and Courier 2 crossed the United States – Mexico border and drove to defendant RODRIGUEZ's home to sell defendant RODRIGUEZ methamphetamine.

### August 3, 2020 Payment of $25,000 for Methamphetamine

63.   On August 3, 2020, using coded language during phone calls, defendants MARTINEZ LOPEZ and RODRIGUEZ agreed to meet at the Pechanga Resort Casino in Temecula, California, so that defendant

MARTINEZ LOPEZ could collect a $25,000 methamphetamine debt from defendant RODRIGUEZ.

64.  On August 3, 2020, defendant RODRIGUEZ drove southbound on Interstate 15 towards the Pechanga Resort Casino with $25,025 of cash in his car and approximately 6.8 grams of methamphetamine on his person.

65.  On August 3, 2020, defendants MARTINEZ LOPEZ and APPEL crossed the United States – Mexico border and traveled to the Pechanga Resort Casino and to defendant RODRIGUEZ's home.

August 26, 2020 Payment of $6,000 for Methamphetamine

66.  On August 26, 2020, using coded language during phone calls, defendant RODRIGUEZ informed defendant MARTINEZ LOPEZ that defendant RODRIGUEZ had $6,000 to pay defendant MARTINEZ LOPEZ towards his outstanding methamphetamine debt and agreed to give the $6,000 to a courier ("Courier 3") at a CVS store near defendant RODRIGUEZ's home.

67.  On August 26, 2020, defendant RODRIGUEZ paid Courier 3 $6,010 in the parking lot of the CVS store for the methamphetamine debt that defendant RODRIGUEZ owed to defendant MARTINEZ LOPEZ.

COUNT TWO

[21 U.S.C. § 963]

[DEFENDANTS RODRIGUEZ, MARTINEZ LOPEZ, PEDIGO, AND APPEL]

A.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing until on or about August 26, 2020, in Riverside County, within the Central District of California, the country of Mexico, and elsewhere, defendants JAVIER RODRIGUEZ, aka "Javi," "Harvey," "Harv," and "Xavier," RUBEN MARTINEZ LOPEZ, AARON MICHAEL PEDIGO, and MANUEL JESUS APPEL, conspired with each other and others known and unknown to the Grand Jury to knowingly and intentionally import into the United States from a place outside the United States at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1), (b)(1)(H).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.   Defendant RODRIGUEZ would purchase methamphetamine for further distribution from suppliers in the country of Mexico, including from defendant MARTINEZ LOPEZ.

2.   Defendant RODRIGUEZ would supply defendant PEDIGO with methamphetamine for further distribution.

3.   Defendant APPEL would transport methamphetamine from suppliers in the country of Mexico, including from defendant MARTINEZ LOPEZ, to defendant RODRIGUEZ.

15

4.    Defendant APPEL would collect payments for methamphetamine from defendant RODRIGUEZ and deliver the payments to defendant MARTINEZ LOPEZ.

C.    OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants RODRIGUEZ, MARTINEZ LOPEZ, PEDIGO and APPEL, together with others known and unknown to the Grand Jury, committed various overt acts in Riverside County, within the Central District of California, the country of Mexico, and elsewhere, including, but not limited to, the following:

1.    The Grand Jury re-alleges and incorporates paragraphs 55 through 67 of Section C of Count One of this Indictment.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT ANAND]

On or about April 22, 2020, in Riverside County, within the Central District of California, defendant JITENDRA SINGH ANAND, aka "Jake," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 21.168 kilograms, of methamphetamine, a Schedule II controlled substance.

COUNT FOUR

[21 U.S.C. §§ 952(a), 960(a)(1), (b)(1)(H)]

[DEFENDANT ANAND]

On or about April 22, 2020, in Riverside County, within the Central District of California, defendant JITENDRA SINGH ANAND, aka "Jake," knowingly and intentionally imported into the United States at least 50 grams, that is, approximately 21.168 kilograms, of methamphetamine, a Schedule II controlled substance, from a place outside the United States, to wit, the country of Mexico.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS GOMEZ, SANTANA, AND CORNELL]

On or about May 28, 2020, in Riverside County, within the Central District of California, defendants TIMOTEO GOMEZ, aka "Timo" and "Tim," ESPERANZA MAGDENLENA SANTANA, and STEPHANIE LORRAINE CORNELL, each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 1,334 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT RODRIGUEZ]

On or about May 28, 2020, in Riverside County, within the Central District of California, defendant JAVIER RODRIGUEZ, aka "Javi," "Harvey," "Harv," and "Xavier," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 2,283 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

[DEFENDANT RODRIGUEZ]

On or about May 28, 2020, in Riverside County, within the Central District of California, defendant JAVIER RODRIGUEZ, aka "Javi," "Harvey," "Harv," and "Xavier," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 27.9 grams, of methamphetamine, a Schedule II controlled substance.

                              COUNT EIGHT

       [21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

                     [DEFENDANTS BARRETT AND MANDONADO]

       On or about May 28, 2020, in Riverside County, within the
Central District of California, defendants PAUL ALBERT BARRETT, aka
"Tech," and ARTHUR MIKE MANDONADO, aka "Toro," each aiding and
abetting the other, knowingly and intentionally possessed with intent
to distribute at least 50 grams, that is, approximately 245.4 grams,
of methamphetamine, a Schedule II controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

[DEFENDANT MANDONADO]

On or about May 28, 2020, in Riverside County, within the Central District of California, defendant ARTHUR MIKE MANDONADO, aka "Toro," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 11.88 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

[DEFENDANT NOVELLINO]

On or about June 9, 2020, in Riverside County, within the Central District of California, defendant PAUL THOMAS NOVELLINO knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 16.73 grams, of methamphetamine, a Schedule II controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi)]

[DEFENDANT NOVELLINO]

On or about June 9, 2020, in Riverside County, within the Central District of California, defendant PAUL THOMAS NOVELLINO knowingly and intentionally possessed with intent to distribute at least 40 grams, that is, approximately 59.2 grams, of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), a Schedule II narcotic drug controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT PEDIGO]

On or about July 21, 2020, in Riverside County, within the Central District of California, defendant AARON MICHAEL PEDIGO knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 1,504 grams, of methamphetamine, a Schedule II controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

[DEFENDANT RODRIGUEZ]

On or about August 3, 2020, in Riverside County, within the Central District of California, defendant JAVIER RODRIGUEZ, aka "Javi," "Harvey," "Harv," and "Xavier," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 6.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FOURTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii); 18 U.S.C. § 2(a)]

[DEFENDANTS GOMEZ AND VARELA]

On or about August 5, 2020, in Riverside County, within the Central District of California, defendant TIMOTEO GOMEZ, aka "Timo" and "Tim," and ANGELICA MONSERRAT VARELA, aka "Angela," each aiding and abetting the other, knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 433 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FIFTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

[DEFENDANT MARQUEZ]

On or about August 7, 2020, in Riverside County, within the Central District of California, defendant RONNIE MARQUEZ, aka "Shadow," knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 186.05 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIXTEEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT RODRIGUEZ]

On or about May 28, 2020, in Riverside County, within the Central District of California, defendant JAVIER RODRIGUEZ, aka "Javi," "Harvey," "Harv," and "Xavier," knowingly possessed the following ammunition, in and affecting interstate and foreign commerce:

1.    50 rounds of Blazer .357 caliber ammunition; and

2.    100 rounds of Winchester 9mm caliber ammunition.

Defendant RODRIGUEZ possessed the ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

1.    Burglary in the First Degree, in violation of California Penal Code Section 459, in the Superior Court of the State of California for the County of Riverside, case number CR24846, on or about February 20, 1986;

2.    Felon in Possession of a Concealable Weapon, in violation of California Penal Code Section 12021, in the Superior Court of the State of California for the County of Riverside, case number CR27674, on or about August 24, 1987;

3.    Possession of a Controlled Substance for Sale, in violation of California Health and Safety Code Section 11351, in the Superior Court of the State of California for the County of Riverside, case number CR42064, on or about April 16, 1992;

4.    Possession of a Controlled Substance, in violation of California Health and Safety Code Section 11350(a), in the Superior

Court of the State of California for the County of Los Angeles, case number NA010053, on or about May 7, 1992;

  5.  Possession of a Controlled Substance for Sale, in violation of California Health & Safety Code Section 11378, in the Superior Court of the State of California for the County of Riverside, case number RIF1101038, on or about August 8, 2011; and

  6.  Possession of a Controlled Substance for Sale, in violation of California Health & Safety Code Section 11378, in the Superior Court of the State of California for the County of Riverside, case number RIF1409977, on or about August 4, 2014.

COUNT SEVENTEEN

[18 U.S.C. § 922(g)(1)]

[DEFENDANT PEDIGO]

On or about July 21, 2020, in Riverside County, within the Central District of California, defendant AARON MICHAEL PEDIGO knowingly possessed the following ammunition, in and affecting interstate and foreign commerce:

1.    20 rounds of Prvi Partizan .223 caliber ammunition; and

2.    One round of Magtech .357 caliber ammunition.

Defendant PEDIGO possessed the ammunition knowing that he had previously been convicted of at least one of the following felony crimes, each punishable by a term of imprisonment exceeding one year:

1.    Burglary in the First Degree, in violation of California Penal Code Section 459, in the Superior Court of the State of California for the County of Riverside, case number RIF097328, on or about July 3, 2001;

2.    Grand Theft, in violation of California Penal Code Section 487(a), in the Superior Court of the State of California for the County of Riverside, case number RIF101119, on or about May 20, 2002;

3.    Falsely Impersonating Another Causing Liability for Lawsuit, in violation of California Penal Code Section 529(3), in the Superior Court of the State of California for the County of Riverside, case number RIF128800, on or about May 26, 2006;

4.    Assault by Means of Force Likely to Produce Great Bodily Injury, in violation of California Penal Code Section 245(a)(4), in the Superior Court of the State of California for the County of San Bernardino, case number FVA1200001, on or about July 29, 2014; and

1       5.   Assault with a Deadly Weapon Other than a Firearm, in

2  violation of California Penal Code Section 245(a)(1), in the Superior

3  Court of the State of California for the County of Riverside, case

4  number RIF10005763, on or about August 4, 2015.

1          COUNTS EIGHTEEN AND NINETEEN

2          [18 U.S.C. § 1956(a)(2)(A)]

3              [DEFENDANT RODRIGUEZ]

4       On the following dates, in Riverside County, within the Central

5  District of California, and elsewhere, defendant JAVIER RODRIGUEZ,

6  aka "Javi," "Harvey," "Harv," and "Xavier," knowingly attempted to

7  transport, transmit, and transfer, funds to a place outside the

8  United States, namely, the country of Mexico, from and through a

9  place inside the United States, namely, Riverside County, with the

10 intent to promote the carrying on of specified unlawful activity,

11 specifically, conspiracy to distribute and possess with intent to

12 distribute methamphetamine, in violation of Title 21, United States

13 Code, Section 846, and conspiracy to import methamphetamine, in

14 violation of Title 21, United States Code, Section 963, through the

15 following transactions:

| COUNT | DATE | INTERNATIONAL FUND TRANSFER |
|---|---|---|
| EIGHTEEN | August 3, 2020 | Attempting to transfer $25,025 in cash to defendant RUBEN MARTINEZ LOPEZ at the Pechanga Resort Casino located at 45000 Pechanga Parkway, Temecula, California |
| NINETEEN | August 26, 2020 | Attempting to transfer $6,010 in cash to a courier for defendant MARTINEZ LOPEZ in the parking lot of the CVS located at 8280 Magnolia Avenue, Riverside, California |

34

FORFEITURE ALLEGATION ONE

[21 U.S.C. §§ 853 and 970]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Sections 853 and 970, in the event of any defendant's conviction of the offenses set forth in any of Counts One through Fifteen of this Indictment.

2.    Any defendant, if convicted, shall forfeit to the United States of America the following:

(a)    All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which the defendant obtained, directly or indirectly, from any such offense;

(b)    All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of any such offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), and as incorporated by Title 21, United States Code, Section 970, any defendant, if convicted, shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof:  (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the

jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Sixteen and Seventeen of this Indictment.

2. Any defendant, if convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offenses set forth in any of Counts Eighteen and Nineteen of this Indictment.

2.   Any defendant, if convicted, shall forfeit to the United States of America the following:

(a)   Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof:  (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.  Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in
committing the offense or offenses giving rise to the forfeiture,
conducted three or more separate transactions involving a total of
$100,000.00 or more in any twelve-month period.

1     SENTENCING ALLEGATIONS

2     [21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii)]

3     1.    Defendant TIMOTEO GOMEZ, aka "Timo" and "Tim," prior to

4 committing the offenses alleged in Counts One, Five, and Fourteen of

5 this Indictment, had been finally convicted of the following serious

6 drug felonies as that term is defined and used in Title 21, United

7 States Code, Sections 802(57), 841 and 851:

8          (a)   Possession with Intent to Distribute Methamphetamine,

9 in violation of Title 21, United States Code, Sections 841(a)(1),

10 (b)(1)(B)(viii), in the United States District Court for the Central

11 District of California, case number CR 10-01234-CAS, on or about

12 December 5, 2011, for which defendant GOMEZ served a term of

13 imprisonment of more than 12 months.  Defendant GOMEZ was released

14 from a term of imprisonment for that offense within 15 years of the

15 commencement of the offenses alleged in Counts One, Five, and

16 Fourteen of this Indictment; and

17         (b)   Conspiracy to Possess with Intent to Distribute and to

18 Distribute Methamphetamine, in violation of Title 21, United States

19 Code, Sections 846, in the United States District Court for the

20 Central District of Illinois, case number CR 96-30051-RM, on or about

21 October 7, 1997, for which defendant GOMEZ served a term of

22 imprisonment of more than 12 months.  Defendant GOMEZ was released

23 from a term of imprisonment for that offense within 15 years of the

24 commencement of the offenses alleged in Counts One, Five, and

25 Fourteen of this Indictment.

26     2.    Defendant RONNIE MARQUEZ, aka "Shadow," prior to committing

27 the offenses alleged in Counts One and Fifteen of this Indictment,

28 had been finally convicted of the following serious drug felony as

40

1   that term is defined and used in Title 21, United States Code,

2   Sections 802(57), 841 and 851:

3            (a)   Conspiracy to Distribute and to Possess with Intent to

4   Distribute Methamphetamine, in violation of Title 21, United States

5   Code, Section 846, in the United States District Court for the

6   Central District of California, case number CR 10-00009(A)-VAP, on or

7   about December 12, 2011, for which defendant MARQUEZ served a term of

8   imprisonment of more than 12 months.  Defendant MARQUEZ was released

9   from a term of imprisonment for that offense within 15 years of the

10  commencement of the offenses alleged in Counts One and Fifteen of

11  this Indictment.

12                                    A TRUE BILL

13

14   _____
                                       Foreperson

15

16  TRACY L. WILKISON
    Acting United States Attorney

17

18

19

20  BRANDON D. FOX
    Assistant United States Attorney
    Chief, Criminal Division

21

22  JERRY C. YANG
    Assistant United States Attorney
    Chief, Riverside Branch Office

23

24  ROBERT S. TRISOTTO
    Assistant United States Attorney
    Riverside Branch Office

25

26

27

28